# VIG DESERT OAKS, LLC

## v.

## AMTRUST INSURANCE CO., et al.

Amtrust Insurance Co.'s Notice of Removal of
Action Pursuant to 28 U.S.C. §§ 1332 and 1441
(Diversity)

## EXHIBIT A

Complaint
(Pages 1 – 12)
and
Demand for Jury Trial
(1 page)

1
2
3
4
5

Michael N. Poli (State Bar No. 005461)
mpoli@pmzlaw.com
**POLI, MOON & ZANE, PLLC**
403 Hill Street
Reno, Nevada 89501
Telephone:  602-857-8180
Facsimile:  602-857-7133
*Attorneys for Plaintiff*

RECEIVED

DEC 0 5 2023

DIVISION OF INSURANCE
STATE OF NEVADA

Electronically Filed
9/28/2023 11:55 AM
Steven D. Grierson
CLERK OF THE COURT

CASE NO: A-23-878583-C
Department 29

6          EIGHTH JUDICIAL DISTRICT COURT

7                CLARK COUNTY, NEVADA

| | |
|---|---|
| 8  VIG DESERT OAKS, LLC, a Nevada limited liability company, individually and as assignee of La Falen Corporation and Vail Commercial Group, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AMTRUST INSURANCE COMPANY, a Delaware corporation; and AMTRUST INSURANCE COMPANY OF KANSAS, INC., a Kansas corporation,<br><br>Defendants. | CASE NO.<br><br>Dept.<br><br>**COMPLAINT FOR:**<br><br>**Breach of Contract, Common Law Bad Faith, Statutory Insurance Claim, and Declaratory Judgment (Reformation of Insurance Contract)**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**ARBITRATION EXEMPTION CLAIMED**<br>*Amount in Controversy Exceeds $50,000* |

18                    **COMPLAINT**

19          Plaintiff, VIG Desert Oaks, LLC, by and through its undersigned counsel,

20   MICHAEL N. POLI of POLI, MOON & ZANE, PLLC, and for a cause of action against

21   the Defendants, hereby alleges and complains as follows:

22              **PARTIES AND JURISDICTION**

23          1.     Plaintiff VIG Desert Oaks, LLC, is a Nevada limited liability company

24   ("VIG") with its principal place of business located in Las Vegas, Nevada.

25          2.     Upon information and belief, Defendant AmTrust Insurance Company

26   ("AmTrust Company") is a Delaware corporation engaged in the business of insurance in

27   the State of Nevada.

28

3.     Upon information and belief, Defendant AmTrust Insurance Company of Kansas, Inc. ("AmTrust Kansas"), is a Kansas corporation engaged in the business of insurance in the State of Nevada.

4.     This Complaint against the Defendants arises from an insurance policy sold and issued by the Defendants in Clark County, Nevada, providing coverage for real and personal property located in Clark County, Nevada (the "Policy," as further defined below).

5.     The Policy identifies the "carrier" as "AmTrust Insurance Company of Kansas, Inc." and references "AmTrust Insurance Company of Kansas, Inc." throughout the Policy, but the Policy also contains an endorsement purporting to change all references to the name "AmTrust Insurance Company of Kansas, Inc." in the Policy to "AmTrust Insurance Company." In an abundance of caution, Plaintiff has named both AmTrust Kansas and AmTrust Company as Defendants.

6.     AmTrust Company and AmTrust Kansas are referred to collectively herein as the "Defendants" or simply "AmTrust."

7.     Plaintiff's claims against the Defendants arise from their breach of the Policy and various breaches of the Defendants' statutory and common law obligations to Plaintiff and/or Plaintiff's assignors, LaFalen Corporation and Vail Commercial Group, LLC, including the duty of good faith and fair dealing, the events and transactions regarding which occurred in Clark County, Nevada. Therefore, this Court has jurisdiction over the subject matter of this action and the parties to this action.

8.     The amount of damages sought by Plaintiff, exclusive of attorneys' fees, interest and costs, exceeds $15,000; therefore, this Court has subject matter jurisdiction.

9.     Venue is proper in this Court because a substantial portion of the acts, events and transactions complained of herein occurred in Clark County, Nevada.

10.    This Court has jurisdiction for purposes of declaratory relief pursuant to NRS 30.030 – 30.050 to reform an insurance contract to correctly identify the party insured under the contract when the contract mistakenly identifies a related party as the insured.

/   /   /

2

1

## FACTUAL BACKGROUND

2   11. Plaintiff is the owner of the commercial property located at 3960 and 4040

3 West Craig Road in Las Vegas, Nevada (collectively, the "Property").

4   12. On or about January 2021, a windstorm occurred causing significant damage

5 to the Property, particularly to the roofs (the "Loss").

6   13. The Property was insured by AmTrust under a commercial policy identified

7 as policy number KPP104918502 (the "Policy").

8   14. At the time of the Loss, the Policy was in full force and effect.

9   15. At the time of the Loss, the Property was owned by La Falen Corporation, a

10 Liberian corporation ("La Falen").

11   16. However, at the time of the Loss, the Policy identified an entity called La

12 Falen Corp Vegas, Inc. ("La Falen Vegas"), as the named insured.

13   17. Upon information and belief, La Falen Vegas never owned the Property.

14   18. La Falen timely submitted a claim to AmTrust regarding the Loss and

15 AmTrust assigned the claim the identifier 3312517 (the "Claim").

16   19. On or about March 24, 2021, AmTrust retained the services of EFI Global

17 ("EFI Global") to provide an engineering report on the scope of damages.

18   20. On or about March 26, 2021, La Falen retained the services of Apex Public

19 Adjusters, Inc. ("Apex") to assist it in handling the Claim.

20   21. On or about March 28, 2021, La Falen retained the services of NVL Design

21 Construction Consulting ("NVL") to inspect the Property and prepare an estimate of the

22 damages.

23   22. On or about May 13, 2021, NVL determined the Replacement Cost Value

24 ("RCV") of the damages to the roofs to be a total of $1,088,088.64.

25   23. On or about May 18, 2021, EFI Global prepared a report regarding the Loss,

26 which concluded:

27     1. The installation of the roofing on the sloped surfaces and

28      along the parapet walls was not in conformance with

       standard installation methods.

3

2.  The mineral coated granular roof delamination and granule loss was due to thermal cycles and drying of the roofing materials. The roofing is near the end of its service life and requires replacement.

3.  The aged roofing along with the improper construction methods produced a weakened roofing envelope such that moderate winds, much lower than the design wind speed, were capable of lifting and tearing the roofing sheets.

4.  The damages and existing condition of the mineral coated granular roof was due to circumstances other than high wind speeds, hail, snow, and ice.

5.  The moderate winds were only the mechanism through which the degraded roofing and poor connections were discovered and was not the proximate cause of the roofing failure, parapet wall covering failure, and overall roof condition.

6.  The interior water damages were due to the failure of the roofing envelope.

24.  Subsequent to receiving the EFI Global report, AmTrust retained the services of JS Held ("JS Held") to review the EFI Global report and prepare an estimate of the cost of repair of the covered damages.

25.  Based on the EFI Global report, JS Held determined the cost of repair of the roofs to be $66,070.50.

26.  Taking only the EFI Global report and JS Held estimate into consideration, and ignoring the NVL estimate, AmTrust paid La Falen $66,070.50, minus the $2,500 deductible, for a total of $63,570.50 (the "Undisputed Amount").

27.  By email dated August 15, 2021, Apex requested detailed information regarding JS Held's repair figures and followed-up on a previous request to receive AmTrust's underwriting inspection report, which was never provided.

28.  By letter to AmTrust dated August 16, 2021, Apex disagreed with EFI Global's report, stating it did not take into consideration 73 mile per hour wind speed or damage to the exterior elevations of the Property.

4

29.     By letter dated August 26, 2021, AmTrust, in response to Apex's August 16, 2021, letter reconsidered its estimate and agreed to provide an additional $1,113.52 in order to maintain "a reasonable uniform appearance with the existing roof-top stucco areas."

30.     AmTrust knew or should have known that the JS Held estimate was unreasonable, incomplete, and constituted a low-ball estimate.

31.     AmTrust's lack of consideration of NVL's estimate is self-serving, willful, wanton, and a conscious and deliberate disregard of La Falen's rights.

32.     AmTrust knew or should have known that its low-ball payment to La Falen was unreasonable and incomplete, and a breach of the duty and obligation of good faith and fair dealing owed to Plaintiff under the Policy.

33.     On or about November 12, 2021, Vail Commercial Group, LLC ("Vail"), entered into an agreement with La Falen to purchase the Property, subject to receipt of, and the satisfactory nature of, certain due diligence information (the "Purchase Agreement").

34.     While the Purchase Agreement due diligence process was proceeding and due to AmTrust's unwillingness to fully indemnify La Falen and provide it with the contractual benefits it is owed under the Policy, La Falen was forced to retain the services of an attorney with the firm Engstrom, Lipscomb & Lack ("ELL") to invoke the Appraisal clause of the Policy.

35.     By letter dated November 18, 2021, ELL, on behalf of La Falen and subsequently Vail, notified AmTrust that it was demanding appraisal under the Policy (the "Appraisal").

36.     By letter dated December 3, 2021, AmTrust notified ELL that the Appraisal provision contained in the Policy was only intended to resolve disagreements regarding ACV and/or amounts of loss, but not intended to resolve matters of coverage, and therefore would not agree to appraisal.

37.     ELL replied to AmTrust on December 14, 2021 stating, in part:

> In order to determine the amount of the loss, we must naturally determine the scope of damage caused by the covered loss. To the extent there are competing scopes of damage, they still

must be valued in the appraisal proceeding. Case law interpreting Appraisal proceedings have held that once an amount of loss has been determined, any coverage issues can be resolved in subsequent litigation. . . . However, as stated previously, coverage for this loss has already been afforded. . . . Please immediately identify your appraiser so the party appraisers can get started on selecting an umpire to work to determine the scope of the appraisal proceeding.

38.  On or about December 30, 2021, La Falen and Vail entered into an agreement titled "Amendment to and Assignment of Agreement of Purchase and Sale," pursuant to which Vail assigned to VIG, all of Vail's right, title, and interest to the Purchase Agreement, and La Falen assigned to VIG, all of LaFalen's rights, title, and interest in all amounts owed by and all claims against AmTrust as a result of or in connection with the Loss (the "Assignment").

39.  Having not heard back from AmTrust regarding its December 14, 2021, email, ELL forwarded a second email to AmTrust on February 11, 2022.

40.  By email dated February 15, 2022, AmTrust replied to ELL stating that it did in fact partially decline coverage by letter dated March 11, 2021, and supplemented the declination of coverage by letter dated August 26, 2021, but would evaluate its position on appraisal and follow-up as soon as possible.

41.  Having not heard further from AmTrust, ELL sent a follow-up email on April 5, 2022, again requesting AmTrust appoint an appraiser so the appraisal process can begin.

42.  On or about April 15, 2022, AmTrust retained the services of an attorney to respond to Plaintiff's demand for appraisal.

43.  Although AmTrust purportedly agreed to appraisal, it continued to dispute coverage. Therefore, it stated that an umpire can evaluate damages but cannot make any determination as to causation or coverage.

44.  VIG's purchase of the Property from La Falen closed on or about June 1, 2022.

/ / /

6

45.     After repeated demands, on June 30, 2022, more than two months after purportedly agreeing to appraisal and six months after the initial demand for appraisal, ELL sent an email to AmTrust noting that AmTrust still had not named its appraiser and demanding that it do so.

46.     La Falen, Vail and VIG have incurred attorneys' fees in connection with the Claim and/or this action.

### FIRST CAUSE OF ACTION

**(Breach of Contract; Breach of Implied Duty
of Good Faith and Fair Dealing)**

47.     The foregoing allegations are hereby incorporated by reference.

48.     AmTrust agreed to provide La Falen coverage for damage sustained to the Property as a result of a loss such as the one described herein.

49.     AmTrust was paid premiums in exchange for its indemnity obligations to La Falen.

50.     The AmTrust policy, like all contracts in the State of Nevada, contains an implied covenant of good faith and fair dealing.

51.     La Falen fulfilled all of its obligations under the AmTrust Policy.

52.     AmTrust failed to perform its obligations pursuant to the AmTrust Policy.

53.     By wrongfully failing to process the Claim in good faith and timely pay the Claim, AmTrust breached the Policy, including without limitation, the implied covenant of good faith and fair dealing in that Policy, thereby depriving La Falen of the benefits it was to have received under the Policy.

54.     AmTrust failed to handle the Claim in a reasonable manner and it has failed to make payments owed under the AmTrust Policy.

55.     AmTrust also breached the Policy by failing to appoint an appraiser and otherwise cooperate with the appraisal demand.

56.     As a direct and proximate result of AmTrust's breach of the contract and breach of the implied covenant of good faith and fair dealing, La Falen sustained reasonably

7

1  foreseeable damages and continues to sustain such damages in an amount to be proven at
2  trial, which rights have been assigned to VIG.

3      57.    VIG is entitled to an award of its attorneys' fees, as well as attorneys' fees
4  incurred by La Falen and Vail in connection with the Claim and/or this action.

5      WHEREFORE, on this claim, Plaintiff VIG, individually and/or as the assignee of
6  Vail and La Falen, requests judgment against AmTrust, as follows:

7      A.    For compensatory damages in a just and reasonable amount (including both
8  contractual damages and extra-contractual or consequential damages) in excess of $15,000,
9  in an amount to be proven at trial;

10      B.    For attorneys' fees and costs, as allowed by statute or contract;

11      C.    For pre- and post-judgment interest;

12      D.    For taxable costs;

13      E.    For a trial by jury on all issues; and

14      F.    For such other relief as the Court deems just and proper.

15  **SECOND CAUSE OF ACTION**

16  **(Tortious Bad Faith Claims Handling)**

17      58.    The foregoing allegations are hereby incorporated by reference.

18      59.    Under Nevada law, insurance policies are subject to additional protection for
19  the insured because the insured pays premiums in advance, without ever knowing if they
20  will need the insurance, and in return they receive (and rely upon) a promise that if they
21  ever need the insurance, they will be dealt with fairly and in good faith.

22      60.    An insurer in Nevada acts in bad faith when it fails to promptly and properly
23  process a claim and when it refuses without proper cause to compensate the insured for a
24  loss covered under the policy of insurance. Such conduct gives rise to a breach of implied
25  duty of good faith and fair dealing in the insurance policy and is actionable as a tort.

26      61.    Consistent with Nevada law, AmTrust owed and continues to owe La Falen
27  and VIG (as La Falen's assignee) a duty of good faith and fair dealing.

28

62.     In this case, AmTrust denied La Falen the benefits of its Policy without a reasonable basis for doing so and without conducting a reasonable investigation, and AmTrust either knew or recklessly disregarded the lack of a reasonable basis for its denial of benefits under the Policy.

63.     Pursuant to the terms of the Policy, AmTrust is obligated to pay La Falen (and its assignee, VIG) for all covered losses associated with and arising from the Loss to the Property.

64.     Without a reasonable justification for doing so, AmTrust has failed to make all proper payments to La Falen (and its assignee, VIG) for the full amount due under the Policy for the losses sustained as a result of Loss.

65.     AmTrust has breached its contractual obligations to La Falen and VIG and AmTrust has refused to perform its duty to cooperate with La Falen and VIG to, *inter alia,* adjust and negotiate the insurance claim fairly and in good faith.

66.     As described herein, AmTrust breached its contractual and qausi-fiduciary obligations to La Falen and VIG and it has violated Nevada's Unfair Claims Settlement Practices Act.

67.     Upon information and belief, AmTrust has consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others. Furthermore, AmTrust acted to serve its own economic interests, rather than the interests of La Falen and VIG. Thus, an award of punitive damages is appropriate in this case.

68.     As a result of AmTrust's unjustified failure to fully pay for the Loss, VIG, as the assignee, has suffered significant consequential damages, including but not limited to losses arising from property that should have been paid for or covered by the Policy, economic loss arising from AmTrust's bad faith claims handling, and the cost of hiring a Public Adjuster and attorney.

WHEREFORE, on this claim, Plaintiff VIG, individually and/or as assignee of La Falen and Vail, requests judgment against AmTrust, as follows:

9

A.   For compensatory damages in a just and reasonable amount (including both contractual damages and extra-contractual or consequential damages) in excess of $15,000, in an amount to be proven at trial;

B.   For punitive damages in a just and reasonable amount;

C.   For attorneys' fees and costs, as allowed by contract or statute;

D.   For pre- and post-judgment interest;

E.   For taxable costs;

F.   For a trial by jury on all issues; and

G.   For such other relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION

### (Violation of Nevada's Fair Claims Practices Act, NRS 686A.310 and NAC 686A, et. seq.)

69.   The foregoing allegations are hereby incorporated by reference.

70.   At all relevant times, AmTrust was and is engaged in the business of insurance in the State of Nevada.

71.   The policy of insurance under which La Falen's insurance claim was asserted was issued and delivered in the State of Nevada.

72.   Based on the facts, set out above, AmTrust committed the acts referred to above knowingly and willfully and (a) failed to effectuate a prompt and fair and equitable settlement of claims in which the liability of the insurer has become reasonably clear; (b) compelled Plaintiff (as assignee of La Falen) to institute litigation to recover amounts due under the insurance policy; (c) failed to promptly provide La Falen with a reasonable explanation of the basis for its coverage decisions and payments; (d) failed to adopt and implement reasonable standards to assure its claims personnel will conduct a prompt investigation and processing of claims arising under AmTrust insurance policies; and (e) failed to settle La Falen's and VIG's claim promptly.

1   73.   As a proximate and direct result of AmTrust's violation of Nevada's Fair

2   Claims Practices laws and regulations identified above, La Falen and VIG were damaged

3   and suffered damages as set forth herein.

4   74.   Plaintiff, as assignee of La Falen, has a private right of action as a result of

5   AmTrust's violations of Nevada's Fair Claims Practice laws described above, based on the

6   facts set forth above and also brings this action against AmTrust pursuant to NRS

7   686A.310(2).

8   75.   Based on the facts set out above, Plaintiff has been compelled as a result of

9   AmTrust's conduct to retain counsel to prosecute this action and is therefore entitled to

10   recover attorney's fees and costs.

11   76.   Based on the facts set out above, AmTrust's wrongful conduct was malicious,

12   oppressive and fraudulent toward La Falen and VIG, and justifies an award of punitive

13   damages against AmTrust as determined by the trier of fact.

14   77.   Based on the facts set out above, as a further proximate result of AmTrust's

15   aforementioned conduct, Plaintiff has been required to obtain the services of an attorney,

16   incurred costs and is entitled to recover those costs and interest.

17   78.   Based on the facts set out above, as a direct result of AmTrust's wrongful

18   conduct described above, Plaintiff, as assignee of La Falen and Vail, has past and future

19   special damages, and past and future general damages, in an amount to be proved at trial.

20   WHEREFORE, on this claim, Plaintiff VIG, individually and/or as assignee of La

21   Falen and Vail, requests judgment against AmTrust, as follows:

22   A.   For compensatory damages in a just and reasonable amount (including both

23   contractual damages and extra-contractual or consequential damages) in excess of $15,000,

24   with an exact amount to be proven at trial;

25   B.   For punitive damages in a just and reasonable amount;

26   C.   For attorneys' fees and costs, as allowed by law or contract;

27   D.   For pre- and post-judgment interest;

28   E.   For a trial by jury on all issues;

11

1    H.    For taxable costs; and

2    I.    For such other relief as the Court deems just and proper.

3                      **FOURTH CAUSE OF ACTION**

4      **(Declaratory Judgment / Reformation of Insurance Contract,
       NRS 30.010, et. seq.)**

5    79.   The foregoing allegations are hereby incorporated by reference.

6    80.   A present controversy exists regarding the identity of the insured(s) under the

7    AmTrust Policy at the time of the Loss.

8    81.   The Court is empowered under NRS 30.030 – 30.050 to clarify the identity

9    of the insured person(s) under the Policy at the time of the Loss.

10   82.   In light of the facts set forth above, the Court should issue an order clarifying

11   that La Falen was the insured party under the Policy at the time of the Loss. *See Nolm,*

12   *LLC, v. County of Clark*, 120 Nev. 736, 739-42 (2004).

13   WHEREFORE, on this claim, Plaintiff VIG, individually and as assignee of LaFalen

14   and Vail, requests judgment against AmTrust, as follows:

15   A.    A Declaratory Judgment declaring that La Falen (not La Falen Las Vegas)

16   was the insured under the Policy at the time of the Loss; and

17   B.    For such other relief as the Court deems just and proper.

18                  **AFFIRMATION pursuant to NRS 239B.030:**

19   The undersigned hereby affirms that this document does not contain the social

20   security number of any person.

21   DATED this 28th day of September, 2023.

22                              **POLI, MOON & ZANE, PLLC**

23

24

25   By: _/s/ Michael N. Poli_
         Michael N. Poli
26       Attorney for Plaintiff VIG

27

28

                              12

1    Michael N. Poli (State Bar No. 005461)
    mpoli@pmzlaw.com
2    **POLI, MOON & ZANE, PLLC**
    403 Hill Street
3    Reno, Nevada 89501
    Telephone:  602-857-8180
4    Facsimile:  602-857-7133
    *Attorneys for Plaintiff*
5

6             EIGHTH JUDICIAL DISTRICT COURT

7               CLARK COUNTY, NEVADA

| | |
|---|---|
| 8   VIG DESERT OAKS, LLC, a Nevada limited liability company, individually and as assignee of La Falen Corporation and Vail Commercial Group, LLC, | CASE NO. A-23-878583-C |
| 9 | Dept. 29 |
| 10         Plaintiff, | **PLAINTIFF'S DEMAND FOR JURY TRIAL** |
| 11 | |
| 12      v. | |
| 13 | |
| 14   AMTRUST INSURANCE COMPANY, a Delaware corporation; and AMTRUST INSURANCE COMPANY OF KANSAS, | |
| 15   INC., a Kansas corporation, | |
| 16        Defendants. | |

17

18      Plaintiff, VIG Desert Oaks, LLC, by and through its undersigned attorney, Michael

19 N. Poli of Poli, Moon & Zane, PLLC, hereby demands a jury trial on all of the issues in

20 the above-captioned matter.

21      DATED this 29th day of September, 2023.

22                    **POLI, MOON & ZANE, PLLC**

23

24                By:   */s/ Michael N. Poli*
                      Michael N. Poli
25                       Attorney for Plaintiff VIG

26

27

28